# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| NOELL SLAPP,<br><br>      Plaintiff,<br><br>v.<br><br>WILLIAM E. TOELKES, INTERNATIONAL BRIDGE AND CONSTRUCTION MARIANAS & DOES 1-10,<br><br>      Defendants. | Case No. 1:12-CV-00028<br><br>**DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

The motion to dismiss before the Court (ECF No. 3) implicates standing, personal jurisdiction, and venue. The Courts GRANTS the motion in part and DENIES it in part. Plaintiff Noel Slapp lacks standing on many of his claims. For the few claims remaining, the Commonwealth of the Northern Mariana Islands (hereinafter "Commonwealth") has personal jurisdiction over Defendants, but venue is improper here. Accordingly, the Court transfers these claims to the District Court of Guam.

## I. BACKGROUND

Slapp is an Australian citizen and Commonwealth resident. (ECF No. 10-1 at ¶ 1 (hereinafter "Slapp Affidavit").) His profession is that of a marine surveyor. (*Id.*; ECF No. 2 at ¶ 2 (hereinafter "Complaint").) He "is the majority shareholder of and primary revenue earner for Allied Marine Surveyors" (hereinafter "Allied Marine"). (Complaint at ¶ 2.) He "is also the corporate secretary of

1

Vimar Offshore, Inc." (hereinafter "Vimar"), which is the owner of VT Holdings, Inc. (hereinafter "VT Holdings"). (*Id.*; Slapp Affidavit at ¶ 2.) Allied Marine and Vimar are both Commonwealth corporations, while VT Holdings is a Panama corporation. (*Id.*)

Defendant William Toelkes is a U.S. citizen and Guam resident. (*Id.* at ¶ 3.) He is an "officer, director and shareholder of [Defendant] International Bridge and Construction/Marianas" (hereinafter "International Bridge"). (*Id.*) International Bridge is a Commonwealth corporation. (*See* ECF No. 3-2 at ¶ 2 (hereinafter "Toelkes Affidavit").).

Much of this dispute centers on Defendants' alleged fraudulent activities surrounding a ship once named "Martha E," but now named "Tamara V." This dispute culminated in Defendants filing a criminal complaint in Korea against Slapp, falsely accusing him of stealing the Tamara V. (*See* Slapp Affidavit at ¶ 14.) At the time of this false accusation, Allied Marine had a civil action pending with this Court, *Allied Marine Surveyors, Ltd. v. Int'l Bridge Corp.*, Civ. No. 10-00017 (D. N. Mar. I.). (*Id.* at ¶ 15.) Defendants filed the false criminal complaint in Korea for the purpose of coercing Slapp to drop this civil suit. (Complaint at ¶ 48; *see* Slapp Affidavit at ¶¶ 15–17.) In December 2010, Korean law enforcement officials arrested him upon this complaint. (Slapp Affidavit at ¶ 14.) Toelkes twice offered to dismiss the criminal complaint in exchange for Slapp dropping Allied Marine's civil action. (*Id.* at ¶¶ 16–17.) Slapp apparently declined both offers. About six weeks after the arrest, Korean prosecutors dismissed all charges against Slapp, and Slapp was permitted to leave Korea. (Complaint at ¶ 54.)

Slapp has filed a First Amended Complaint alleging eight claims of relief: RICO (first through third causes of action), malicious prosecution (fourth), criminal conversion (fifth), fraud (sixth), civil conspiracy (seventh), and alter ego (eighth). Defendants have filed a motion to dismiss this complaint in entirety. (ECF No. 3-1 at 10 (hereinafter "Motion").)

## II. JURISDICTION

The Court has jurisdiction over the RICO claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and over all other claims pursuant to both 28 U.S.C. § 1332[1] (diversity jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

## III. STANDARDS

To survive a motion to dismiss for failure to state a claim under Rule 12 (b)(6) of the Federal Rules of Civil Procedure, the complaint must allege "sufficient facts to raise" a plaintiff's "right to relief above the speculative level." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). It must make the right to relief plausible. *Twombly*, 550 U.S. at 557. All allegations must be assumed true, *id.* at 555–56, but legal conclusions need not be, *Iqbal*, 556 U.S. at 678. The factual allegations must "give fair notice and . . . enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012). Factual allegations also "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

A different standard applies to a defendant's motion to dismiss under Rule 12(b)(2) (lack of personal jurisdiction) and 12(b)(3) (improper venue). Here, the plaintiff bears the burden of showing that personal jurisdiction exists and that venue is proper. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995); *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In evaluating both bases, the court may consider evidence outside the complaint, such as

---

[1] At the hearing on this motion, both Slapp and Defendants' counsel affirmed that Slapp has not been "lawfully admitted for permanent residence in the United States . . . ." *Cf.* 28 U.S.C. § 1332(a)(2) (if an alien is so admitted, she is treated as a citizen of her domiciliary state).

affidavits. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001); *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). Finally, any factual disputes must be resolved in the plaintiff's favor. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2003).

## IV. DISCUSSION

Defendants raise seven bases for dismissing the complaint in entirety: (1) the complaint's failure to comply with pleading rules; (2) lack of personal jurisdiction; (3) improper venue; (4) *forum non conveniens*; (5) failure to state a claim on standing grounds; (6) failure to state a claim generally; and (7) judicial estoppel. Slapp concedes that the alter ego claim should be dismissed. (ECF No. 10 at 20 (hereinafter "Opposition")), but does not explicitly concede dismissal of the other seven claims.

The Court's ruling hinges on three of these issues: standing, jurisdiction, and venue. Each are addressed in turn.

### A. STANDING

Defendants contend that Slapp lacks standing for five claims in entirety—the three RICO claims, criminal conversion, and fraud—and for one claim in part: the portion of the civil conspiracy claim based on the debt owed to Allied Marine. (Motion at 15.) They also contend that Slapp's opposition "completely ignores" this ground for dismissal. (Reply at 1.) This characterization is not entirely accurate. Slapp does acknowledge the standing argument in one sentence, stating that "a review of the FAC and Declaration shows that Slapp has standing to bring these causes of action." (Opposition at 18.) Accordingly, this Court first summarizes the law of standing and then applies it to the facts gleaned from a review of the complaint and Slapp's declaration.

4

A shareholder of a corporation, even if he is that corporation's sole shareholder, does not have standing as an individual to assert a claim where the harm is to the corporation and not to himself. *See Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 640–41 (9th Cir. 1998) (citing *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 713 P.2d 1197, 1199 (Alaska 1986)); *Hikita*, 713 P.2d at 1199; *see also Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983), *cert. denied*, 464 U.S. 1012 (1983). The only exceptions to this are "(1) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders, [or] (2) where there is a special duty, such as a contractual duty, between the alleged wrongdoer and the shareholder." *Hikita*, 713 P.2d at 1199; *Sparling*, 864 F.2d at 640–41. If the corporation has only one shareholder, only the latter exception applies. *Sparling*, 864 F.2d at 641.

Slapp lacks standing on the five claims in entirety and on the civil conspiracy claim in part. With these claims, the complaint alleges harm only to the corporation, without alleging the existence of any special duty. For instance: The complaint alleges that Defendants fraudulently induced Slapp to purchase airline tickets, causing him a pecuniary loss, but those tickets were all purchased "using Allied Marine's" funds. (Complaint at ¶ 20.) Defendants "repeatedly failed and refused . . . to pay Allied Marine," and Defendants "never actually intend[ed to] mak[e] payment to Allied Marine." (*Id.* at ¶¶ 21–22.) In fact, "[a]ll of the business transactions that [Slapp] had with Defendants was on behalf of Allied [Marine] and Vimar." (Slapp Affidavit at ¶ 9.)

Defendants allegedly "divest[ed Slapp] of his ownership interests in the 'Tamara V[]' " (Complaint at ¶ 25), but that ownership interest was only as the sole shareholder in the corporation VT Holdings, and it was the corporation that actually owned the Tamara V (*e.g.*, *id.* at ¶¶ 23–24, 66; *cf. id.* at ¶¶ 27–28, 30, 33, 38, 59, 64 (referencing Slapp's ownership interest in the ship, but not clarifying that this interest was only as the owner of the corporation that owned the Tamara V)).

5

Defendants allegedly collected unlawful debt, but that "caus[ed] pecuniary loss to VT Holdings" and only harmed Slapp "by extension . . . ." (*Id.* at ¶ 26.) Slapp also seeks to recover for harm to the United States and not to himself. (*See id.* at ¶¶ 57–59.) In short, none of these harms are to Slapp personally.

Only two acts in the three RICO claims allege a harm occurring to Slapp: Defendants' malicious prosecutions and prospective malicious prosecutions of Slapp. (*See id.* at ¶¶ 40–56, 60.) But malicious prosecution is not actionable under RICO and must instead be brought as a state tort law claim. *Grauberger v. St. Francis Hospital*, 169 F. Supp. 2d 1172, 1178 (N.D. Cal. 2001). Accordingly, Slapp fails to state a RICO claim for malicious prosecution and prospective malicious prosecution.

Similarly, Slapp's fraud claim fails because it is based on these harms to Allied Marine and VT holdings, and not harms to him personally. (*See* Complaint at ¶¶ 94–97 (basing claim on the "moneys owed to Allied marine" and on the conversion of the Tamara V).)

The criminal conversion claim (*id.* at ¶¶ 87–93) fails because he cannot prosecute crimes.

Finally, there is the civil conspiracy claim, which is based on both Defendants' preventing Slapp from collecting a debt and on malicious prosecution. (*Id.* at ¶¶ 99–105.) Slapp lacks standing only for the former half of this claim, as the complaint's only factual allegations about debt referred to obligations owed to Allied Marine. (*Id.* at ¶¶ 21–22.)

In sum, only two of the complaint's claims remain: the fourth claim for malicious prosecution and the portion of the seventh claim alleging civil conspiracy for malicious prosecution.

**B. PERSONAL JURISDICTION**

Defendants contend that this Court lacks personal jurisdiction over Toelkes, conceding that personal jurisdiction over International Bridge exists. (Motion at 3.)

Absent an applicable federal statute, a district court may exercise personal jurisdiction over a nonresident defendant only if both the state long-arm statute permits it and exercising jurisdiction does not violate federal due process standards. *Saipan Air, Inc. v. Stukes*, No. 1:12-CV-00015, 2013 WL 670026, *3 (D. N. Mar. I. Feb. 25, 2013); *see Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2003); *see also* 28 U.S.C. § 1332(e). The Commonwealth's long-arm statute "subjects both residents and nonresidents to the Court's jurisdiction to the fullest extent allowable under the due process standards of the U.S. Constitution." *Saipan Air, Inc.*, 2013 WL 670026 at *3; *Bank of Saipan v. Superior Court*, 2001 MP 5 ¶ 38. Thus, at bottom, the issue here is whether the Court's exercising personal jurisdiction over Toelkes comports with federal constitutional due process.

Personal jurisdiction over a nonresident defendant may take the form of either general jurisdiction or specific jurisdiction. *See, e.g.*, *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Slapp does not argue that the Court possesses general jurisdiction over Toelkes (Opposition at 9–12), thus implicitly conceding there is no basis for asserting general jurisdiction.

To determine whether exercising specific jurisdiction over a nonresident defendant comports with federal due process, the Ninth Circuit applies a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The burden is on the plaintiff to satisfy the first two prongs; if she does not, the "case must be dismissed." *Boschetto*, 539 F.3d at 1016. If the first two prongs are

7

satisfied, the burden shifts to the defendant to "come forward with a compelling case that the exercise of jurisdiction would not be reasonable." *Id.*

### 1. Purposeful Direction

The first prong comprises "two distinct concepts": purposeful availment and purposeful direction. *Schwarzenegger*, 374 F.3d at 802. The former is most often used in suits sounding in contract; the latter in suits sounding in tort. *Id.* Malicious prosecution is an intentional tort. Thus, the Court undertakes purposeful direction analysis here.

When evaluating purposeful direction, courts apply the "effects" test based on *Calder v. Jones*, 465 U.S. 783 (1984). *See, e.g.*, *Yahoo! Inc. v. La Ligue Contre le Racisme el' Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc), *cert. denied*, 547 U.S. 1163 (2006); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). The effects test imposes three requirements: "the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206 (internal quotation marks and brackets omitted).

### a. Intentional Act

An intentional act "is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). Under this broad definition, Toelkes committed an intentional act by filing a false criminal complaint with the Busan Port Police (Complaint at ¶¶ 82–83; Slapp Affidavit at ¶ 14). He also committed an intentional act by then attempting to use these criminal charges to coerce Slapp to dismiss the then-pending 2010 civil case in this Court (Complaint at ¶¶ 48, 83; Slapp Affidavit at ¶ 16).

### b. Expressly Aimed

An intentional tort is expressly aimed at the plaintiff's home forum when the defendant knows "the impact of his [tort] would be felt there." *See Washington Shoe*, 704 F.3d at 675–66. This is so even if all the acts occurred outside the forum state. *See id.* at 676. Thus, if the defendant sought to wrongfully deprive the plaintiff of his property in the forum state, the defendant's acts are expressly aimed there. *Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir. 2007).

That is essentially what Toelkes did here. In filing a criminal complaint in Korea, he did so for the purpose of coercing Slapp to use his power as Allied Marine's majority owner (Complaint at ¶ 2) to dismiss Allied Marine's then-pending civil action in the Commonwealth (*id.* at ¶ 83; *see also* Slapp Affidavit at ¶ 16). While dismissal would have been a harm to Allied Marine and not Slapp, this is of no consequence because the impact of Slapp's tort would still be felt in the Commonwealth. *Cf.* Part IV.B.1.c, *infra*.

Toelkes contends that this act cannot constitute express aiming at the Commonwealth. (Reply at 5.) He correctly asserts that this prior case was improperly brought in the Commonwealth—it lacked personal jurisdiction—and was transferred to the District Court of Guam. (*Id.*) He then concludes, essentially, that because this prior case was improperly brought, their acts attempting to barter its dismissal could not impact the Commonwealth. (*Id.*)

This argument is not persuasive. Contacts arising from an ultimately legally unenforceable contract are sufficient for jurisdictional purposes. *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on other grounds sub nom.*, *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998). It follows, then, that contacts arising from the coercive targeting of an ultimately legally improper court proceeding are also sufficient for jurisdictional purposes.

Toelkes attempted to coerce dismissal of the Commonwealth proceedings in December 2010. (Complaint at ¶¶ 48, 82; Slapp Affidavit at ¶¶ 16–17.) It was not until a full nine months later that this Court found jurisdiction lacking and transferred the case to Guam. *Allied Marine v. International Bridge Corporation*, No. 1:10-CV-00017, 15–16 (D. N. Mar. I. Sep. 19, 2011). Thus, when the coercion occurred, Toelkes targeted the forum state. He sought the dismissal of this civil action, with Slapp "tak[ing] nothing from [it]," in exchange for dismissal of the criminal charges. (Complaint at ¶ 48.) Toelkes knew the impact of this tort—wrongly filing criminal charges in Korea to extort dismissal of the Commonwealth case—would impact the Commonwealth court proceedings.

### c. Causing Harm

The third prong requires that that the defendant "cause harm that [she] knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1209 (internal quotation marks and brackets omitted). This does not require that "the 'brunt' of the harm . . . be suffered in the forum state," but some amount of constitutionally sufficient harm must have been suffered there. *Id.* at 1207. Accordingly, it is possible to find this prong not satisfied even when the defendants expressly aimed their acts at the forum state. *See id.* at 1209 (stating that "it is obvious" that the first two prongs were satisfied, but that the third prong's satisfaction "is somewhat problematic" and a much closer call).

Slapp provides no helpful guidance on this prong. He argues only that "Toelkes knew his attempt to coerce Slapp to dismiss the civil action pending in this Court would have an impact on the Commonwealth . . . ." (Opposition at 12.) Attempting to coerce dismissal of a case is not a harm where the person elects not to dismiss it and the court subsequently dismisses the case for reasons unrelated to that coercion. This is so because no possibility of harm remains—Slapp's case has already been dismissed on jurisdictional grounds—and the threat alone is not a sufficient harm. *See*

10

*Yahoo! Inc.*, 433 F.3d at 1209–11 (implying that the harm prong would not be satisfied if it was based only on the plaintiff's refusal to comply with another's legal threats, but also implying that this prong may be satisfied where the possibility of future penalty from those threats remains).

This prong's satisfaction is somewhat problematic. All harm to Slapp occurred in Korea. Slapp experienced physical discomfort and mental anguish in Korean jail cells and interrogation rooms. (*See* Complaint at ¶¶ 43–44, 85.) Similarly, Slapp's expenses incurred in defending and providing for himself occurred in Korea. (*Id.* at ¶ 85.) While Slapp claims to have lost substantial income (*id.* at ¶ 46), what he actually pleads is that his business, Allied Marine, lost substantial income. (*See id.* (listing the following as an example of lost income: "an appointment to conduct an[] underwater inspection of one of Allied Marine's regular clients' vessel that was subsequently given to a competitor of Allied Marine, valued at about $28,000").) This is not harm to him personally, but it is harm in the Commonwealth, see *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011) ("[A] corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business.").

This harm to Allied Marine in the Commonwealth satisfies this prong. The prong itself, textually, requires only that the defendant's acts caused harm in the forum state and does not require that it be harm to the plaintiff. *See, e.g.*, *Yahoo! Inc.*, 433 F.3d at 1206–07, 1209 (requiring that the defendant "cause harm that [she] knows is likely to be suffered in the forum state" (internal quotation marks and brackets omitted)); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (same), *cert. denied*, 132 S. Ct. 1101 (2012).

This conclusion comports with due process fundamentals. Due process analysis is not about who suffered harm and where; it is about whether it is fair to compel the defendant to defend an action in the forum state. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011);

11

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Fairness depends on the defendant's contacts with or targeting of the forum state, and thus, it may be fair to exercise jurisdiction where the defendant "attempt[ed] to obstruct [the forum state's] laws." *See J. McIntyre Machinery, Ltd.*, 131 S. Ct. 2787; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (Fairness depends, in part, "on whether [the defendant's] activities relating to [the forum state] are such as to give that State a legitimate interest in holding [the defendant] answerable on a claim related to those activities."). For this reason, the Supreme Court held that personal jurisdiction is satisfied where the plaintiff suffers the vast majority of harm outside the forum state. *See Keeton, Inc.*, 465 U.S. at 775, 780. Though the plaintiff there did still suffer some harm in the forum state, it did not seem critical to the Supreme Court's holding. Rather, personal jurisdiction was satisfied because of the defendants' contacts with the forum state, and given those contacts, "it must [have] reasonably anticipate[d] being haled into court there . . . ." *Id.* at 780. In short, the jurisdictional inquiry should not "focus[] on the nature of [the plaintiff], its contacts with the forum, and how it is affected by the harm[, but instead] . . . . on the [the defendants], their contacts with the forum, and their intent to cause harm." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1493 (9th Cir. 1993) (Wallace, C.J., dissenting) (majority of panel agreeing on dissent's purposeful availment analysis), *holding modified by Yahoo! Inc.*, 433 F.3d 1199 (adopting, en banc, then-Chief Judge Wallace's main argument in his dissent that purposeful availment does not require the majority of the harm occur in the forum state).

Here, Toelkes expressly targeted this forum, in an attempt to obstruct ongoing court proceedings. The Commonwealth, and this Court, has a substantial interest in protecting the integrity of its proceedings. Based on Toelkes' coercive targeting of ongoing legislation in the

Commonwealth, he must have reasonably anticipated being haled into court here to answer upon those acts. For these reasons, the third prong is satisfied.

### 2. Forum-Related Conduct

To satisfy the forum-related conduct prong, that plaintiff "must show that he would not have suffered an injury 'but for' [the defendant's] forum-related conduct." *Menken*, 503 F.3d at 1058. Toelkes' forum-related conduct was wrongfully filing a criminal complaint in Korea for the purpose of extorting Slapp to dismiss his case in the Commonwealth. But for this act, Slapp would not have been detained in Korea and been subject to criminal proceedings there. Although Toelkes' contacts with the Commonwealth are "not extensive, a 'single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state.' " *Cf. id.* at 1060. Because Slapp's malicious prosecution cause of action arises out of that purposeful contact, the forum-related conduct prong is satisfied.

### 3. Reasonableness

The first two prongs of the effects test have been satisfied, so the burden is now on Toelkes to "come forward with a compelling case that the exercise of jurisdiction would not be reasonable." *Cf. Boschetto*, 539 F.3d at 1016. In determining whether the exercise of jurisdiction is reasonable, courts consider seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken*, 503 F.3d at 1058.

Toelkes contends that exercising jurisdiction is not reasonable because the Commonwealth "has little interest in addressing the claims asserted in the lawsuit, which relate to the alleged acts taken . . . entirely in Korea . . . ." (Reply at 6.) He also contends that it is inefficient to litigate in the Commonwealth because Defendants are located in Guam and much of the evidence on the malicious prosecution charge is in Korea. (*Id.*)

Toelkes has not satisfied his burden. The Commonwealth has substantial interest in assuring the integrity of its cases. If Defendants are impermissibly seeking dismissal of Commonwealth cases by filing criminal charges against its litigants in a foreign jurisdiction, this is a matter of concern for the Commonwealth.

Additionally, it would not be unfairly burdensome to litigate here. "[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *Menken*, 503 F.3d at 1060 (internal quotation marks omitted). "[U]nless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991) (internal quotation marks omitted). Further, where two forums neighbor each other, any inconvenience is lessened. *See id.* Because Guam and the Commonwealth neighbor each other, it is not severely burdensome to litigate here. Though there is some burden, Slapp—a Commonwealth resident—has an interest in convenient relief, and requiring him to litigate in Guam would unfairly transfer Toelkes' burden to him. And while some evidence may be in Korea, any burden flowing from that would also be present in any federal forum.

On balance, Defendants have not come forward with a compelling case that the exercise of jurisdiction would not be reasonable.

14

## C. VENUE

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2). Venue is also proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *Id.* § 1391(b)(1). Slapp resides in Guam, so only the former standard based on the substantial part of the events applies here.

In determining where a substantial part of the events occurred in a tort action, "the locus of the injury [i]s a relevant factor." *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075–76 (9th Cir. 2001). Thus, if "at least one of the harms suffered by Plaintiffs . . . was felt in [the forum state]," a substantial part of the events may have occurred there. *See Myers*, 288 F.3d at 1075–76 (internal quotation marks omitted). But harm alone is "not the sole and decisive factor[;]" also relevant is "the place where the allegedly tortious actions occurred . . . ." *Mach 1 Air Servs. Inc. v. Bustillos*, No. CV–12–02617–PHX–GMS, 2013 WL 1222567, *10 (D. Ariz. Mar. 25, 2013); Wright & Miller, Federal Practice & Procedure, § 3806.1 Subsections 1391(a)(2) and (b)(2)—Transactional Venue ("[M]ore activity is required in venue cases than is necessary to satisfy constitutional due process . . . .").

Despite acknowledging that the locus of injury is only one factor, the Ninth Circuit has seem satisfied finding venue proper based primarily on where the brunt of the harm occurred. *Myers* found venue proper in the forum state based solely on the locus of harm. *See Myers*, 238 F.3d at 1075–76. There, the cause of action was tantamount to a tort of invasion of privacy, where "the primary damage is mental distress[,] . . . [which] can only be felt where Plaintiffs' 'sensibilities' reside . . . ." *Id.* at 1074–76. Later, in *Fiore*, the Ninth Circuit primarily focused on "the economic injuries suffered by [the plaintiffs] . . . in [the forum state]," even though the acts causing those losses

15

occurred outside that state. *See Fiore v. Walden*, 688 F.3d 558, 570, 587–88 (9th Cir. 2011), *cert. granted on same grounds*, 133 S. Ct. 1493 (2013). Those acts were law enforcement officers' alleged unconstitutional seizure of the plaintiffs' money, which was the subject of the plaintiffs' *Bivens* action. *See id.* at 570.

Here, a substantial part of the events did not occur in the Commonwealth. All the acts occurred in Korea. Defendants provided false information to Korean law enforcement officials (Complaint at ¶ 83), and these officials then arrested and interrogated Slapp (*id.* at ¶¶ 43–44). This Korean arrest is the basis of Slapp's cause of actions. (*Id.* at ¶ 82.)

Additionally, as already discussed, all Slapp's harm occurred in Korea. Even if the harm to Allied Marine could be considered for venue analysis, the bulk of the harm remains in Korea.

One could argue that, like *Fiore*, expenses incurred in Korea were ultimately realized in the Commonwealth because Slapp no longer had this money when he returned. Therefore, that argument continues, *Fiore* mandates the conclusion that the bulk of the harm occurred in the Commonwealth. But that conclusion errs. The claim in *Fiore* was over the improper seizure of large sums of money. *See Fiore*, 688 F.3d at 588. Thus, the bulk of the harm could be determined, largely, by the harms flowing from the loss of that money. But malicious prosecution is not about only money; it is also about the physical and mental anguish incurred. Because this anguish occurred in Korea, and because all acts occurred in Korea, a substantial part of the events did not occur in the Commonwealth.

In sum, the Commonwealth is not the proper venue.

### D. TRANSFER

Whenever a district court finds either that it lacks personal jurisdiction or that venue is improper, the court must transfer the action to another court where the case could have been brought

if it is in the interest of justice. *See* 28 U.S.C. §§ 1406(a), 1631. Normally, transfer under this provision "will be in the interest of justice because . . . dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.' " *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990).

For this reason, the Court transfers the case to the District Court of Guam, as the case could have been brought there. The requirements of both personal jurisdiction and proper venue are satisfied there, as Toelkes resides there and International Bridge has its principal place of business there. (*See* Opposition at 10; Toelkes Affidavit at ¶¶ 13, 15.) Defendants also concede that transferring this case to the District Court of Guam is proper. (Motion at 10.)

## V. CONCLUSION

The motion to dismiss is granted in part and denied in part. The alter ego claim is dismissed. Slapp lacks standing for all claims except the claim for malicious prosecution and the portion of the civil conspiracy claim based on malicious prosecution. For these two remaining claims, the District Court for the Northern Mariana Islands has personal jurisdiction over Slapp, but it is not the proper venue. Because Slapp could have brought his case in the District Court of Guam, the Court orders his case transferred to that district. The Clerk of Court shall transfer this case to the District Court of Guam.

SO ORDERED this 30th day of September, 2013

_____
RAMONA V. MANGLONA
Chief Judge

17